FILED
2023 Jun-23 PM 01:07
U.S. DISTRICT COURT
N.D. OF ALABAMA

Lincoln Financial Group®

The Lincoln National Life Insurance Company
Disability and Life Claims
PO Box 2578
Omaha, NE 68172-9688
Phone No.: (877) 246-5670
Secure Fax No.: (603) 334-0380

February 11, 2022

Mr. Allan A. Araya

RE: Long Term Disability (LTD) Benefits
Duke Energy Corporation
Claim #: 11295718

Dear Mr. Allan Araya:

We reviewed your appeal request for Long Term Disability ("LTD") benefits and maintained the decision to deny benefits.

**Initial Claim Decision**

You submitted a claim for your absence from work as of December 13, 2020, as a result of unspecified fracture of right patella, sprain of ligaments of cervical spine, unspecified pain of right shoulder joint, and generalized anxiety disorder. Your LTD benefits were due to begin on June 13, 2021, after the Policy's elimination period was completed. However, your claim was denied as the evaluation concluded you were not disabled throughout and beyond the Policy's elimination period.

The basis for the decision was outlined in a letter dated July 29, 2021. Please see this correspondence for full details. You were provided an opportunity to request an appeal review of the denial, stating the reasons why you felt that your claim should not have been denied, and submit additional information to support your claim. Specifically, you were advised to submit the following information: *Evidence that you meet the 180 day elimination period and all documentation from Caromont Family Medicine, Carolina Orthopaedic PT & Rehab, Dibella Chiropractic Center, Atrium Health, Ortho Carolina and any of your other treating providers from December 1, 2020 through the present that would show evidence that you do meet the definition of disability from your occupation beyond June 12, 2021 such as: test results with positive findings, hospitalization records, lists of prescription medications with their start date/dosages, a detailed treatment plan which would outline a description of your specific restrictions and limitations, and any physical or occupational therapy records, any psychotherapy /counseling treatment notes, plans of care, psychiatric evaluations or assessments and treatment notes, and all psychiatric and psychological test results or reports. If there are any records of admission for inpatient psychiatric care, for partial hospitalization or for an intensive outpatient program (IOP), please provide copies of the medical records associated with any such treatment, therapy records, hospital admission records, prescription history and treatment plans from October 1, 2020 through present from all treating providers to support your inability to perform your occupation within the national economy due to*



EXHIBIT
2

*your medical condition, such as: any psychotherapy / counseling treatment notes, plans of care, psychiatric evaluations or assessments and treatment notes, and all psychiatric and psychological test results or reports. If there are any records of admission for inpatient psychiatric care, for partial hospitalization or for an intensive outpatient program (IOP), please provide copies of the medical records associated with any such treatment. You should also provide any additional information that you feel will support your claim.*

**Appeal**

In your letter of appeal dated July 29, 2021, you indicated you were injured in an automobile accident on December 13, 2020, and sustained a secondary automobile accident on February 20, 2021. You reported that the secondary accident aggravated your injuries further.

You reported you were on several medications for the injuries to include Diclofenac Sodium 75 mg, Venlafaxine ER 75 mg, Hydroxyzine HCL 25 mg, Amitriptyline 25 mg, Cyclobenzaprine 5 mg and Ibuprofen 600 mg for pain management and injury treatment. You noted you followed up with multiple health care providers due to these injuries sustained and have medical records to verify the injuries and damages you sustained from the motor vehicle accidents. Due to these injuries, you reported it had hindered your work duties, and your activities of daily living have been compromised because of it.

You reported that you were unable to resume your activities of daily living and were to continue to follow up with your primary care physician, physical therapist, and orthopedic specialist. Due to the ongoing issues with your health, you reported that your orthopedic has recommended you do injections soon for treatment. Because of these ongoing issues and being medically excused from your occupation, it had interfered with your activities of daily living and living expenses. You reported that your physicians did not feel you were able to perform your occupational duties and you have scheduled multiple follow up appointments to still manage your care.

In support of your claim, you submitted the following information:

- Physical therapy records from various providers at OrthoCarolina dated May 25, 2021, through August 18, 2021
- Medical records from Dr. McHale dated May 6, 2021, through August 9, 2021
- Letter from Carolinas Medical Center indicating emergency department treatment on December 13, 2020, through December 14, 2020
- Duplicate records from Dr. Prato dated December 16, 2020, through March 11, 2021
- Records from Caromont Health (Alesha Logan, FNP and Christy Bush FNP) dated December 5, 2019, through July 28, 2021
- Records from Dr. Robert Alden Milam dated June 9, 2021

**Appeal Evaluation**

During the review of your appeal, your claim was reviewed by Elana Dlugach, M.D., an independent physician who is board certified in psychiatry, child & adolescent psychiatry. The result of the September 16, 2021, review is summarized below,

You had diagnoses of unspecified fracture of the right patella, initial encounter for closed fracture and generalized anxiety disorder (GAD). The period in review is from April 30, 2021, and beyond. You did not have any impairments from the psychiatric standpoint and did not require restrictions and limitations beyond April 30, 2021. You had the ability to perform sustained full-time work beyond April 30, 2021. Complaints of anxiety, primarily when driving, were noted, you received hydroxyzine and Effexor XR, last noted dose adjustment was on April 1, 2021. No adverse effects to medications were noted. Mental status examination was normal. You had been primarily out of work due to physical injuries, which will be deterred to the appropriate specialty for review. It appeared you had difficulty sleeping and difficulty with activities of daily living by your report, mostly related to injuries and pain.

To ensure a fair interpretation of the records was conducted, Dr. Dlugach attempted contact with Christy Bush, FNP. However, contact was not established as of the date of Dr. Dlugach's completed report. A fax was sent on September 16, 2021, to Christy Bush, FNP with additional questions. Response was requested by September 23, 2021.

Christy Bush, FNP responded on September 20, 2021, indicating you have PTSD from car accidents. Your anxiety was preventing you from working. As of September 9, 2021, you were still anxious about driving and being out in public. Your medication was increased at last visit.

During the review of your appeal, your claim was reviewed by Moshe Lewis, M.D., an independent physician who is board certified in physical medicine & rehabilitation, with added expertise in hand and upper extremities. The result of the September 16, 2021, review is summarized below,

You had complaints of bilateral knee pain, neck pain and shoulder pain status post vehicular collision. CT to the right lower extremity revealed a comminuted fracture of the posterior tibial plateau. Extensive construction as described. Complete PCL tear near complete MCL tear. The pain was noted to interfere with sleep. You were attending physical therapy and chiropractic care with improvements noted. You had complained of persistent pain on extremities despite therapy.

Exam of the bilateral knees noted tenderness. Exam of the right knee noted antalgic gait on the right. Range of motion from approximately 5-100 degrees. There was a positive posterior drawer 1 to 2+. There was medial joint line tenderness. There was tenderness over the lateral patellar facet on the right as well. Left knee range of motion was from 0 to 120 degrees. Range of motion of your right knee cracks and grinds. The left side seemed to hurt more in the calf area.

Exam of the cervical spine noted range of motion extension was 50/60 with pain, pain with rotation noted. There was moderate tightness on the right. Tenderness on palpation in the C5-C7 was moderate and the quality was dull Right shoulder depression was positive. Spinal subluxation levels were in the C5, C6, C7, T1 and T2. There was moderate tightness in the right upper thoracic paraspinals. Dull and moderate tenderness on palpation at T1-T2. The right upper thoracic paraspinals were moderate and dull. There was pain over the anterior shoulder and on internal rotation. Positive Hawkins and Neer impingement testing. You also reported impaired function with activities of daily living (ADLS) due to bilateral knee pain. Per recent visit, you continued to complain of persistent pain on both knees. You also complained of neck pain. Sit tolerance of about 40 minutes.

You reported pain in neck/right shoulder had improved 20% since the start of physical therapy.

Exam of the right shoulder noted active range of motion (AROM) was still limited. Neer's impingement with pain. The cervical AROM was limited at 75% and stiff. Right posterior quadrant with neck pain. There was pain with overhead impingement tests and resisted shoulder flexion. Recent Exams of the right knee noted ROM was restricted and painful. Quadricep and hamstring limitations were severe on the right. Right knee strength was also impaired. Straight leg raise on the right was unable. The quad contraction on the right was poor and left was poor. Right valgus stress was positive and negative and functional squat was 25%.

Restrictions form by Alesha Logan, NP dated April 8, 2021, indicated you would be on a sedentary restriction with lifting/carrying up to 10 pounds occasionally, sitting over 50% of the time and standing/walking occasionally. There was limited mobility secondary to the motor vehicle accident. The restrictions were noted imposed from December 15, 2020, through May 5, 2021. Dr. Lewis agreed with the restrictions outlined by Ms. Logan.

Dr. Lewis outlined the following restrictions from April 30, 2021, through November 30, 2021,

- Occasional bending, twisting and crouching for up to a total of two hours in an 8-hour workday
- Restricted from lifting/carrying greater than 10 pounds on occasion
- Restricted from prolonged walking/standing greater than 15 minutes at a time for a total of two hours in an 8-hour workday
- Restricted from prolonged sitting greater than 30-minutes at a time for up to a total of 6-hours in an 8-hour workday

Dr. Lewis indicated that you are capable of sustained full-time work within the restrictions and limitations noted above.

To ensure a fair interpretation of the records was conducted, Dr. Lewis attempted to contact Dr McHale, Kevin DiBella, DC, and Dr. Prato. Messages were left; however, contact was not established with Dr. McHale or Dr. Prato as of the date of Dr. Lewis' completed report. Faxes with additional questions were sent on September 16, 2021, to Dr. McHale and Dr. Prato with a response requested by September 23, 2021

On September 9, 2021, Dr. Lewis spoke with Kevin DiBella, DC who indicated you were released from treatment on the neck, back and shoulder in May 2021 and you were going to follow up with ortho. He confirmed the accuracy of the conversation via fax on September 17, 2021.

Dr. Prato responded to the faxed questions on September 20, 2021. Dr. Prato indicated you were diagnosed with a PCL tear, MCL sprain, tibial plate fracture. You had flexed knee gait, knee sleeve for stability. When asked what your estimated restrictions were, Dr. Prato indicated none. Your last visit was on April 22, 2021, and your estimated return to work was likely at that date.

Your claim was reviewed by a vocational consultant, who completed an occupational analysis in order to identify the material and substantial duties of your occupation as it is normally performed in the national economy. The analysis showed the occupation is typically performed as Sedentary in the National Economy, Per the DOT. National Economy demands levels include:

- Occasional reaching, handling and fingering

- Frequent talking and hearing

An addendum review was requested by the vocational consultant to comment specifically on neck bending and rotation for occupational demands. It was also requested to address whether it was typical for a sit/stand desk within the workspace set up for the occupation, or if this would be an accommodation.

The vocational consultant noted the following,

*Research was completed utilizing DOT, ERI and ONET. Neck bending and rotation requirements are not specifically addressed in the research for this occupation. However, per a review of the material and substantial functions, this occupation would typically be performed in an office environment, and it is reasonable to conclude that neck bending and rotation would be minimal (occasional) as performed at an ergonomically correct workstation.*

*The tasks involved for this occupation which include time on the telephone, computer and communicating in person would all allow for the incumbent to change positions at will and alternate between sitting and standing. In the current employment environment, and as a result of technological advancement, employers are providing a variety of workstation types and associated equipment that allow individuals opportunity to experience and sustain comfort in their respective work settings within the occupation(s).*

On September 30, 2021, we emailed you a letter which included a copy of the independent physician reviews and occupational analysis performed in connection with your request for appeal.  You were given an opportunity to review and respond with any additional information that you would like considered before a final determination was made on the appeal. On December 1, 2021, we confirmed that your response was complete.

In response we received the following,

- Letter from you dated October 2, 2021
- Records from OrthoCarolina dated September 1, 2021, through November 29, 2021
- Response to peer review questions from Dr. McHale dated October 12, 2021

An additional review was conducted by Dr. Moshe Lewis. The result of the December 13, 2021, review is summarized below,

Dr. Patricia McHale, MD indicated in her October 12, 2021, response that your diagnosis for the visit on August 9, 2021, was healed PCL and MCL sprains of the right knee, and chronic pain of the right knee. Objectively, you were doing well after physical therapy, and with bracing. You did have some subjective complaints of ongoing pain. Your prognosis was fair given the continued pain complaints without obvious additional structural pathology. At this point, with respect to the knee, there were no restrictions. From the standpoint of your knee, as long as you wore your brace, it was fine with Dr. McHale for you to return to work without restrictions as of the date of tis letter. No restrictions have been set to you specifically previous to this.

Additional clinical notes dated September 2021 to November 2021 reflected that you continued with complaints of neck, right knee and right shoulder pain that can get severe. MRI of the right knee without contrast dated November 11, 2021, showed remote trauma to the posterior tibial plateau/PCL. Remote trauma to the MCL without acute abnormality and minimal joint fluid. X-ray

of the right shoulder in October 2021 showed there was a small anterior acromial spur. There was a slight irregularity involving the posterior glenoid which could represent possibly a healed fracture versus wear of the glenoid itself.

You reported that the pain started at the side of your neck and radiated down to the right shoulder. You added that pain in the superior aspect of your right shoulder. You noted a knot sensation in the right trapezius. You reported difficulty sleeping on your right shoulder. You also had pain when squatting.

Your right knee was a lot better but continued to feel a popping sensation. Maximum flexion of the knee is what was really bothering you. You had been wearing your knee brace. Right knee exam had noted range of motion lacked 5-10 degrees of terminal flexion, but quad strength was improving. Dr. McHale later noted in November 2021, that you had well-maintained range of motion and no instability. You had healed MCL and PCL strains in the right knee. The doctor noted that there were no restrictions with regard to the knee, as long as you continued wearing your knee brace. Exams have noted limited neck range of motion, and tenderness and stiffness in the cervical spine musculature. Right shoulder motion was also restricted and painful. There was decreased motor strength in the right upper extremity rated 4/5. Impingement test was positive. You continued with home exercise program and medications for the neck. You had started physical therapy for the right shoulder.

You had impairing diagnoses of unspecified fracture of right patella, initial encounter for closed fracture. Sprain of ligaments of cervical spine, initial encounter and bicipital tendinitis of the right shoulder. For the right knee from April 30, 2021, to November 30, 2021, Dr. Lewis supported the following restrictions and limitations,

- Limited to occasional bending at the knees, twisting and crouching for a total of two hours in an eight-hour workday
- Restricted from prolonged walking/standing greater than 15 minutes at a time for a total of two hours in an 8-hour workday.
- Restricted from lifting/carrying greater than 10 pounds on occasion

For the neck and right shoulder, from April 30, 2021, to February 28, 2022, Dr. Lewis outlined the following restrictions and limitations,

- Restricted from prolonged sitting greater than 30 minutes at a time for up to a total of six hours in an eight-hour workday
- Limited to occasional neck bending and rotation, overhead reaching for up to two hours in a workday
- No repetitive shoulder joint motion or forceful pushing/pulling in the right upper extremity

To ensure a fair interpretation of the records was conducted, Dr. Lewis attempted to contact physical therapist Pacitto. Messages were left; however, contact was not established as of the date of Dr. Lewis' completed report. Dr. Lewis faxed questions to Ms. Pacitto on December 13, 2021, requesting a response by December 27, 2021.

On January 7, 2022, additional records were received from CaroMont Regional Medical Center dated February 1, 2021, through January 7, 2022. Additionally, on January 11, 2022, additional

records were received from CaroMont Health dated September 9, 2021, through January 5, 2022. On January 13, 2022, additional records from Lesley Pacitto PT dated January 5, 2022, through January 11, 2022, were received.

An additional review was conducted by Moshe Lewis, M.D., an independent physician board certified in physical medicine & rehabilitation. The result of the January 18, 2022, review is as follows,

Dr. Moshe summarized the additional records submitted below,

Office visit note dated 12/09/21, by Christy Bush, FNP, Family Medicine, you presented for a follow up consultation. You were diagnosed with impingement syndrome of the right shoulder (you were taking 3 different NSAIDs on chart. Recommended only taking one), anxiety state (Effexor was increased to 150 at last appointment). Positive depression screening at orthopedic doctors. Still not making much progress with anxiety medications. Problem list notes; Biceps tendonitis of the right shoulder, subacromial bursitis of the right shoulder joint, and sprain of the posterior cruciate ligament of the right knee. You were going to do PT, and continued to do home PT. You reported arthralgias and myalgias, decreased concentration and you were nervous and anxious. On examination, normal ROM, in the cervical ROM normal, and wearing bilateral knee braces. You were seen today for high cholesterol and anxiety. You were recommended for a psychiatric referral, needing more than meds, as you stated you were home most of the time, and continued to not feel ready to work. A referral to AMB psychiatry, and counseling is ordered. Advised to return in 3 months.

Office visit note by Aaron Brown, MD dated 01/05/22. You presented for a follow up consultation. You complained of a knot on the back of his head, due to a MVA. You stated that the pain goes down to your right shoulder, and experienced headaches. Due to injury from MVA, 11 months ago. He hit his head on a window. Having pain in that area, with radiation to the right upper shoulder and neck, doing PT still. Concerned about a painful nodule, that will not go down the right scalp. On examination, you were generally well developed, and in no acute distress. There is tenderness in the 3cm subcutaneous soft mass right posterior scalp. The neck ROM is normal, no masses, and no thyromegaly and thyroid nodules. You had good judgment. Normal mood and affect. You were assessed with scalp mass (ongoing and painful after MVA) persisting hematoma. Surgical evaluation considering pain. AMB referral to general surgery.

Physical Therapy note by Lesley Marie Pacitto, PT dated 1/5/2022. This is the 15th PT visit. You reported having headaches with knot on the back of the head. Reports you had been having headaches that go from the top of the head, and go down into the right shoulder and neck. You indicated pain in the area of the right upper trapezius and right anterior shoulder. On examination, the right shoulder AROM, flexion 120 degrees with pain, scaption is 85 degrees with pain, and external rotation (90) is 80 degrees. You were assessed with right shoulder and neck pain since July 2021.

Physical Therapy note by Emily Reece, PTA dated 1/11/2022. This is the 17th PT visit. You reported having headaches with knot on the back of the head. This happened during second MVA and had not resolved. Assessment: Pain was present with all exercise throughout session. Tenderness to palpation along anterior shoulder. Ultrasound performed to reduce inflammation and control pain. Verbal cues for scapular retraction with cable column rows. Encouraged to continue HEP

consistently. Will assess results from upcoming MD appointment.

Our role in reviewing your file is to determine whether your medical condition and the medical documentation contained in your file supports that you are unable to perform the material and substantial duties of your own occupation. We are not required to ensure the availability of this occupation or that you return to active employment with your former employer in the same or different position.

Dr. Moshe Lewis was asked if the additional information changed his opinions from his December 13, 2021, review. In response he indicated,

*The additional information changes my answers regarding neck and right shoulder restrictions/limitations in the 12/13/2021, report to address driving.*

*The claimant has impairing diagnoses of sprain of ligaments of cervical spine, initial encounter (S13.4XXA) and bicipital tendinitis of the right shoulder (M75.21).*

*The claimant has impairing diagnoses of unspecified fracture of right patella, initial encounter for closed fracture. (S82. 001A), sprain of ligaments of cervical spine, initial encounter (S13. 4XXA) and bicipital tendinitis of the right shoulder (M75.21).*

*For the right knee, from 4/30/2021 to 11/30/2021, the claimant is limited to occasional bending at the knees, twisting, and crouching for up to a total of 2 hours, in an 8-hour workday. He is restricted from prolonged walking/standing greater than 15 minutes at a time, for a total of 2 hours, in an 8-hour workday. He is restricted from lifting/carrying greater than 10 pounds on occasion.*

*For the neck and the right shoulder: From April 30, 2021, beyond, he is restricted from lifting/carrying greater than 10 pounds on occasion. He is restricted from prolonged sitting, greater than 30 minutes at a time, for up to a total of 6 hours, in an 8-hour workday. He is limited to occasional neck bending and rotation, overhead reaching for up to a total of 2 hours in a day. The claimant is limited to driving for 2 hours in an 8-hour workday. No repetitive shoulder joint motion or forceful pushing/pulling in the right upper extremity. These restrictions/limitations apply through 2/28/2022.*

*Additional clinical notes dated September 2021 to November 2021, reflect that the claimant continues with complaints of neck, right knee and right shoulder pain that can get severe. MRI of the right knee without contrast dated 11/11/21, showed remote trauma to the posterior tibial plateau/PCL. Remote trauma to the MCL without acute abnormality and minimal joint fluid. X-ray of the right shoulder in October 2021 showed there was a small anterior acromial spur. There was a slight irregularity involving the posterior glenoid which could represent possibly a healed fracture versus wear of the glenoid itself. He reported that the pain starts at the side of his neck and radiates down to the right shoulder. He has added pain in the superior aspect of his right shoulder. The claimant noted a knot sensation in the right trapezius. He reported he has difficulty sleeping on his right shoulder. He also has pain when squatting. His right knee was a lot better but continues to feel a popping sensation. Maximum flexion of the knee is what really bothers him. He has been wearing his knee brace. Right knee exam had noted range of motion lacked 5-10 degrees of terminal flexion, but quad strength was*

*improving. Dr. McHale later noted in November 2021, that the patient has well-maintained range of motion and no instability. He has healed MCL and PCL strains in the right knee. The doctor noted there are no restrictions with regards to the knee, as long as he continues wearing his knee brace. Exams have noted limited neck range of motion, and tenderness and stiffness in the cervical spine musculature. Right shoulder motion is also restricted and painful. There is decreased motor strength in the right upper extremity rated 4/5. Impingement test is positive. He continues with home exercise program and medications for the neck. He has started physical therapy for the right shoulder. Recent office visits note continuing pain in the neck and shoulder, as well as anxiety. He is still wearing knee braces. He has good range of motion in the neck and shoulders.*

To ensure a fair interpretation of the records was conducted, Dr. Lewis attempted to contact Christy Bush, FNP. Messages were left and a fax requesting contact was sent; however, contact was not established as of Dr. Lewis' completed report. Dr. Lewis sent a fax to Christy Bush, FNP with additional questions requesting a response by February 1, 2022. On January 18, 2022, we received a fax with Christy Bush, FNP who indicated that you were referred to psychiatry.

Although Dr. Lewis outlined restrictions as noted above based on the additional information received, the restrictions are within your occupational demands.

An additional review was conducted by Elena Dlugach, MD, an independent physician board certified in psychiatry. The result of the January 20, 2022, review is as follows,

Dr. Dlugach indicated that the additional information did not change her opinions form her September 16, 2021, review.

The provider Christy Bush, FNP stated that anxiety was preventing you from working. You reported you were still anxious about driving and being out in public. Positive depression screening at orthopedic doctor was noted. It was noted you were not making much progress with anxiety with medications. You are able to drive to your mom's house. You had stated that you don't have any friends or social outings. You were also scared to work because of the pain.

While you were distressed by having pain, there was no evidence that your depression was causing functional impairment. You were able to drive to your mother's house, and to the appointment. There were no documented suicidal or homicidal ideation, psychotic symptoms or difficulty with activities of daily living. There were no adverse effects to medications causing impairment.

To ensure a fair interpretation of the records was conducted, Dr. Dlugach attempted to contact Christy Bush, FNP. Messages were left; however, contact was not established as of Dr. Dlugach's completed report. A fax with additional questions was sent to Ms. Bush, with a response requested by February 10, 2022.
Additional records were received as follows,

- Medical records from Christy Bush, FNP-C dated December 9, 2021
- Medical records from CaroMont Health (George John Hatsios, MD; Aaron Brown, MD; David Ellertson Jr., MD) dated February 23, 2021, January 5, 2022, and January 27, 2022
- Letter from Christy Bush, FNP-C dated January 31, 2022

An additional review was conducted by Dr. Elana A. Dlugach, MD on February 8, 2022, an

independent board-certified psychiatrist. The result of the review is as follows,

Dr. Dlugach was asked if the response from Christy Bush, FNP changed her prior conclusions or opinions. She responded,

*This is an addendum from a Psychiatry perspective. The claimant is a 40-year-old male. Response to questions from provider Christy Bush, FNP stated the claimant has been under her care since July 28, 2021. She has been treating him for anxiety and chronic pain after having two major car accidents within a few months of one another. She took over care for him from his previous PCP after that provider left the clinic. She has been adjusting his anxiety medications but was not getting anywhere. She referred him to psychiatry in December 2021 as he stated he was still having anxiety about driving and worried about not being able to work because he would be worried about making mistakes which caused his anxiety to be worse. He does drive himself to his appointments but does not really drive anywhere else because of his anxiety. He was last seen on December 9 and the provider recommended counseling in hopes this would help him be able to work again one day. He has his first appointment this month. She recommends reaching out to them for further recommendations.*

*The response from Christy Bush, FNP does not change my prior conclusions/opinions. It is noted that the claimant reports a lot of anxiety about driving and making mistakes at work due to anxiety being worse. He has been referred to therapy and psychiatry. However, he has been able to drive himself to his appointments, although he reports that he does not go anywhere else because of his anxiety. No functional impairment from anxiety is documented to support the inability to work.*

Although Christy Bush, FNP-C recommended reaching out to counseling for further recommendations, no counseling records were provided for review.

An additional review was conducted by Moshe Lewis, MD, an independent physician, board-certified in physical medicine & rehabilitation. The result of the February 8, 2022, review is as follows,

*This is an addendum from a Physical Medicine & Rehabilitation perspective. The claimant is a 41-year-old male. The additional information does not change any of my prior conclusions or opinions from my 12/13/21 review.*

*My previous opinion was the claimant has impairing diagnoses of unspecified fracture of right patella, initial encounter for closed fracture. (S82. 001A), sprain of ligaments of the cervical spine, initial encounter (S13. 4XXA), and bicipital tendinitis of the right shoulder (M75.21). The claimant has impairing diagnoses of unspecified fracture of right patella, initial encounter for closed fracture. (S82. 001A), sprain of ligaments of the cervical spine, initial encounter (S13. 4XXA), and bicipital tendinitis of the right shoulder (M75.21). For the right knee, from 4/30/2021 to 11/30/2021, the claimant is limited to occasional bending at the knees, twisting, and crouching for up to a total of 2 hours, in an 8-hour workday. He is restricted from prolonged walking/standing greater than 15 minutes at a time, for a total of 2 hours, in an 8-hour workday. He is restricted from lifting/carrying greater than 10 pounds on occasion. For the neck and the right shoulder: From April 30, 2021, beyond, he is restricted from lifting/carrying greater than 10 pounds on occasion. He is restricted from prolonged sitting, greater than 30 minutes at a time, for up to a*

*total of 6 hours, in an 8-hour workday. He is limited to occasional neck bending and rotation, overhead reaching for up to a total of 2 hours in a day. The claimant is limited to driving for 2 hours in an 8-hour workday. No repetitive shoulder joint motion or forceful pushing/pulling in the right upper extremity. These restrictions/limitations apply through 2/28/2022.*

*The claimant continues with impairments in the right shoulder and neck and is still using a knee brace. He is attending physical therapy.*

Our role in reviewing your file is to determine whether your medical condition and the medical documentation contained in your file supports that you are unable to perform the material and substantial duties of your own occupation. We are not required to ensure the availability of this occupation or that you return to active employment with your former employer in the same or different position.

## Conclusion

We conducted a thorough and independent review of your entire claim including additional reviews by an independent physician board-certified in physical medicine & rehabilitation and additional reviews by an independent physician board-certified in psychiatry. In summary, we acknowledge that you may have continued to experience some impairments and symptoms associated with your condition. However, the information does not contain physical or mental exam findings, diagnostic test results or other forms of medical documentation supporting your impairments and symptoms remained of such severity, frequency and duration that they resulted in restrictions or limitations rendering you unable to perform the duties of your occupation throughout and beyond the Policy's elimination period.

Having carefully considered all of the information submitted in support of your claim, our position remains that proof of your continued disability in accordance with the Policy provisions has not been provided. Therefore, no benefits are payable.

This claim decision reflects an evaluation of the claim facts and Policy provisions.

## Policy Provisions

In order to receive benefits, you must satisfy the requirements of all Policy provisions that state, in part:

> ***"Disability"*** *or* ***"Disabled"*** *means:*
>
> > *i. that during the Elimination Period and the next 24 months of Disability the Covered Person, as a result of Injury or Sickness, is unable to perform the Material and Substantial Duties of his Own Occupation; and*
> >
> > *ii. thereafter, the Covered Person is unable to perform, with reasonable continuity, the Material and Substantial Duties of Any Occupation.*

*"**Elimination Period**" means a period of consecutive days of Disability or Partial Disability for which no benefit is payable. The Elimination Period is shown in the Schedule of Benefits and begins on the first day of Disability.*

*If the Covered Person returns to work for any ninety or fewer days during the Elimination Period and cannot continue, Lincoln will count only those days the Covered Person is Disabled or Partially Disabled to satisfy the Elimination Period.*

*"**Material and Substantial Duties**" means responsibilities that are normally required to perform the Covered Person's Own Occupation, or any other occupation, and cannot be reasonably eliminated or modified.*

*"**Mental Illness**" means a psychiatric or psychological condition classified as such in the most current edition of the Diagnostic and Statistical Manual of Mental Disorders (DSM) regardless of the underlying cause of the Mental Illness. If the DSM is discontinued, Lincoln will use the replacement chosen or published by the American Psychiatric Association.*

*"**Own Occupation**" means the Covered Person's occupation that he was performing when his Disability or Partial Disability began. For the purposes of determining Disability under this policy, Lincoln will consider the Covered Person's occupation as it is normally performed in the national economy.*

*"**Proof**" means the evidence in support of a claim for benefits and includes, but is not limited to, the following:*

> *1. a claim form completed and signed (or otherwise formally submitted) by the Covered Person claiming benefits;*
>
> *2. an attending Physician's statement completed and signed (or otherwise formally submitted) by the Covered Person's attending Physician; and*
>
> *3. the provision by the attending Physician of standard diagnosis, chart notes, lab findings, test results, x-rays and/or other forms of objective medical evidence in support of a claim for benefits.*

*Proof must be submitted in a form or format satisfactory to Lincoln.*

Under the Employee Retirement Income Security Act (ERISA) appeal guidelines, you were entitled to appeal the decision made by Lincoln National Life Insurance Company, and to submit any additional information you wished to be considered as part of the appeal. Lincoln National Life Insurance Company has conducted a full and fair review of your appeal and accompanying materials, and has concluded that the denial of benefits will be maintained.

At this time, your administrative right to review has been exhausted; no further review will be conducted by Lincoln National Life Insurance Company and your claim will remain closed. You may request to receive, free of charge, copies of all documents relevant to your claim. You have the

right to bring a civil action under section 502(a) of ERISA following an adverse benefit determination on review.

Duke Energy Corporation's Long-Term Group Disability Income Policy contains the following provision, that states in part,

> ***Legal Proceedings***
> *A claimant or the claimant's authorized representative cannot start any legal action:*
> *1. until 60 days after Proof of claim has been given; or*
> *2. more than three years after the time Proof of claim is required.*

If your plan is subject to ERISA, you may have other voluntary alternative dispute resolution options, such as mediation. One way to find out what may be available is to contact your local U.S. Department of Labor Office or your state insurance regulatory agency. In addition, once all required reviews of your claim have been completed, you have the right to bring a civil action under applicable law. Your employer's plan has a contractual limitations period of three years, which means that a lawsuit must be brought within three years after the date written proof of claim or proof of continued disability was required. The date on which the contractual limitations period expires for this claim is December 8, 2024.

This information is provided for purposes of this claim only, as the time proof of claim is required may differ based on claim specifics and applicable policy language.

Nothing in this letter should be construed as a waiver of any Lincoln National Life Insurance Company rights and defenses under the above captioned Policy, and all of these rights and defenses are reserved to the Company, whether or not they are specifically mentioned herein.

Decisions made by Lincoln National Life Insurance Company are based on the provisions outlined in Duke Energy Corporation's Long-Term Group Disability Income Policy. These provisions are not contingent on decisions made by either the Social Security Administration or other disability-determining entities. No internal rules, guidelines, protocols, standard or other similar criteria were relied upon in rendering the claim determination.

If you require language translation assistance, please contact Lincoln National Life Insurance Company to initiate a service provided free of charge to assist with understanding your claim and appeal rights.

如果您需要翻译方面的帮助，请联系我，我会免费为您服务以便了解您的要求和诉求。

Shá ata' hane'go shíká a'doowoł nínízingo saad hosíníłį́į' dóó ná'ookąąh nííní'ą́ągo naaltsoos nííníłtsoozígíí hazho'ó bik'idi'deeshtį́įł nínízingo doo bą́ąh ílínígóó níká a'doowoł éí biniiyé shił hodíílnih áko ákwe'égi níká adeeshwoł.

Si necesita traducción, contácteme para iniciar un servicio gratuito a fin de ayudarle a entender sus derechos de reclamo y apelación.

Kung nangangailangan ka ng tulong sa translation, mangyaring makipag-ugnayan sa akin upang gumamit ng serbisyong ibinigay nang walang bayad upang matulungan kang maunawaan ang iyong mga karapatan sa paghahabol at pag-aapela.

If you have any questions regarding this matter, please contact me.

Sincerely,

Joshua Tuliano
Appeals Specialist
Phone No.: (877) 246-5670 Ext. 16440
Secure Fax No.: (603) 334-0380